IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| CHARLESWORTH NICHOLAS, ) | |
| ) | |
| Plaintiff, ) | CIV. NO.: 05-cv-00119 |
| v. ) | |
| ) | |
| GRAPETREE SHORES, INC. d/b/a DIVI ) | |
| CARINA BAY RESORTS and ELLEN HENRY ) | |
| AS EXECUTOR/ADMINISTRATOR OF THE ) | |
| ESTATE OF PATRICK HENRY. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION and ORDER

Finch, Senior Judge

THIS MATTER is before the Court on the motion of defendants Grapetree Shores, Inc. ("Divi") and Ellen Henry as executor/administrator of the Estate of Patrick Henry ("Henry") (collectively, "defendants") to dismiss the plaintiff Charlesworth Nicholas' ("Nicholas" or "plaintiff") second amended complaint. Defendants contend that because Nicholas' claims arise from Divi's alleged breach of a settlement agreement between Divi, Nicholas, and the Union representing Nicholas, his claims are preempted by § 301 of the Labor Management Relations Act ("LMRA"). Defendants also attack Nicholas' defamation claim on the grounds that it is preempted by § 7 of the National Labor Relations Act ("NLRA"). Nicholas opposes the motion arguing that the settlement agreement is not a collective bargaining agreement governed by § 301, and that even if it were, his claims are not preempted by § 301. He also asserts that he has stated a claim under § 7. For the reasons stated below, the defendants' motion to dismiss is granted in part and denied in part.

I.      **Background**[1]

Charlesworth Nicholas is a former Divi employee and the current acting president of the Virgin Islands Workers Union ("VIWU"). (Compl. ¶ 5.)  On June 22, 2005, Divi management held a meeting with its employees in response to Nicholas' efforts to unionize its employees. (Compl. ¶ 9.)  At the meeting, Divi employee Patrick Henry made disparaging remarks about Nicholas.  Henry stated that Nicholas was a disgruntled former employee who had committed bad acts and had been terminated.  Henry also asserted that Nicholas was in financial difficulty and wanted to unionize the employees so he could use their dues to pay his bills.  (*Id*.)  Nicholas was not then an employee of Divi and was not present at the meeting.  Two years prior, in December 2003, Divi had entered into a settlement agreement ("Agreement") with Nicholas after the VIWU filed a National Labor and Relations Board complaint against the company on Nicholas' behalf.[2]  In the Agreement, Divi agreed to "treat Nicholas' separation from employment as a voluntary resignation" and to "remove the documentation concerning termination from his personnel file." (*Id*. ¶ 12; Def. Mot. Ex. 1).  Nicholas alleges that the statements made by Henry were defamatory and in breach of the Agreement. (*Id*. at 13.)  Nicholas further asserts that he was not an employee represented by the union when the alleged defamation and breach of the Agreement occurred, and that the union did not exist at that time. (*Id*. at 16-17.)

---

[1] The following facts, taken from the second amended complaint, are, for the purpose of this motion only, accepted as true and construed in the light most favorable to the Plaintiffs. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir.2008).
[2] The Agreement indicates that Nicholas was suspended from his employment on July 27, 2003 and then ultimately terminated. (Mot. Ex. 1.)

In Nicholas' second amended complaint, he assert that the conduct of the defendants constitutes (1) defamation, (2) breach of a territorial and federal contract; and (3) intentional or negligent infliction of emotional distress, and he seeks punitive damages.[3]

## II.     Standard of Review

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true all well-pled factual allegations in the complaint and draws all reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted.)  However, to withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).   Plausibility is established when the facts recited allow the court to form the reasonable inference that the defendant is liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*Iqbal*, 129 S.Ct. at 1948).  While the court accepts all well-pleaded facts as true, it disregards legal conclusions. *Id*. Accordingly, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Iqbal*, 129 S.Ct. at 1949).

## III.    Discussion

"It is well established that state-law claims are presumptively preempted by the NLRA when they concern conduct that is actually or arguably either protected or prohibited by the NLRA . . . and by the LMRA when such claims rely upon an interpretation of a collective

---

[3] This action was removed from the Superior Court on August 17, 2005 based on defendants' argument that plaintiff's claim was preempted by § 301 of the Labor Management Relations Act.  Shortly thereafter, defendants filed a motion to dismiss and for summary judgment, later withdrawn when defendants filed a motion to compel arbitration.  Defendants originally sought to compel arbitration, relying on an employment agreement that Nicholas entered into with Divi. (Doc. 17, Mot. to Stay).  The Court denied the motion, finding that the defamation claims of Nicholas did not "arise out of or related to the Hourly Employee Agreement."  (Doc. 32, Mem. at  3.)  The Third Circuit affirmed the Court's decision on appeal.  (Doc. 50.)

bargaining agreement." *Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n*, 90 F.3d 797, 801 (3d Cir. 1996) (citing *Belknap, Inc. v. Hale*, 463 U.S. 491, 498 (1983); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988)). Here, defendants contend that Nicholas' defamation claims are preempted by both acts, and that the remaining claims are preempted by the LMRA. The Court first addresses the preemption of the defamation claim under the NLRA.

### A. Is the alleged defamation protected by § 7 of the NLRA?

Defendants argue that because the alleged defamatory statements were made in response to a union-organizing drive, that the defamation claims are preempted by § 7 of the NLRA. Plaintiff counters that the conduct alleged meets the exception to § 7 preemption.

The NLRA, codified at 29 U.S.C. § 141 et seq., establishes the right of employees to form unions and prohibits unfair labor practices that interfere with that right. *Linn v. United Plant Guard Workers of America, Local 114*, 383 U.S. 53, 59 (1966) (citing §§ 7-8 of the NLRA or the "Act").[4] The National Labor Relations Board (the "Board") is given exclusive power to enforce prohibitions of the NLRA. *Id.* at 59 n.3 (citing § 10 of the Act). Consequently, "state regulations and causes of action are presumptively preempted if they concern conduct that is actually or arguably either prohibited or protected by the [NLRA]." *Pennsylvania Nurses*, 90 F.3d at 801 (quoting *Belknap*, 463 U.S. at 498). On the other hand, "[t]he state regulation or cause of action may . . . be sustained if the behavior to be regulated is behavior that is of only

---

[4] Section 8 prohibits employers or labor organizations from interfering with, restraining or coercing employees' right to organize but also states that

> [t]he expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit.

29 U.S.C. § 158 (c).

peripheral concern to the federal law or touches interests deeply rooted in local feeling and responsibility." *Belknap*, 463 U.S. at 498 (citing *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959)).

In *Linn*, the Supreme Court considered whether the NLRA preempted a state law claim for libel brought by a management employee against the union. 383 U.S. at 55. The *Linn* court acknowledged that § 8(c) of the Act "manifests a congressional intent to encourage free debate on issues dividing labor and management" and noted that the Labor Board had frequently declined to sanction common place epithets circulated during labor controversies, even where erroneous or defamatory. *Id*. at 60-61.[5] On the other hand, while the Labor Board had tolerated "intemperate, abusive and inaccurate statements" during union activities, it had not interpreted the Act "as giving either party license to injure the other intentionally by circulating defamatory or insulting material known to be false." *Id* at 61 (citing *Maryland Drydock Co. v. National Labor Relations Board*, 183 F.2d 538 (4th Cir. 1950)). The Supreme Court concluded that malicious libel was "merely a peripheral concern" of the Act, and that "a State's concern with redressing malicious libel is 'so deeply rooted in local feeling and responsibility' that it fits within the exception specifically carved out by *Garmon*."[6] *Id*. (quoting *Garmon*, 359 U.S. at 244). Adopting the standard articulated in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), the Supreme Court held that the Act permitted recovery of damages in a state cause of action

---

[5] Indeed, as the Supreme Court noted on another occasion:

> Labor disputes are ordinarily heated affairs; the language that is commonplace there might well be deemed actionable per se in some state jurisdictions. Indeed, representation campaigns are frequently characterized by bitter and extreme charges, countercharges, unfounded rumors, vituperations, personal accusations, misrepresentations and distortions. Both labor and management often speak bluntly and recklessly, embellishing their respective positions with imprecatory language.

*Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 272 (1974) (citing *Cafeteria Employees Union, etc. v. Angelos*, 320 U.S. 293, 295 (1943)).

[6] As cited above, in *Garmon,* the Supreme Court articulated instances where state law claims would not be preempted by federal law labor. *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 243-244 (1959).

"for defamatory statements published with knowledge of their falsity or with reckless disregard of whether they were true or false." *Id.* at 65. In addition, in order to recover, the plaintiff must prove actual harm. *Id.*[7]

In the complaint, Nicholas alleges that Divi employee and co-defendant Patrick Henry defamed him at the employee meeting as follows:

> [B]y accusing the Plaintiff of stealing money from the Union, claiming that Plaintiff only wants a Union recognized to represent the employees so that Plaintiff can steal the employees['] dues, claiming that the Plaintiff was a former disgruntled employee who had been terminated and was just trying to get back at the hotel, claiming that Defendants had a file full of information of bad acts committed by the Plaintiff and inferring that at least some of them were criminal acts, and further claiming that Plaintiff was broke, in financial trouble and owed money all over town and wanted the Union to be recognized so he could steal dues to pay his bills.

(Compl. ¶ 9.)

Nicholas claims that he has alleged facts sufficient to show that Henry's statements were made with malice, *i.e.*, with knowledge of falsity or reckless disregard of the truth, and that they injured him. (Opp. at 12-13.) Defendants disagree and also contend that the statements are merely "exaggerated rhetoric" that is "commonplace in labor disputes and protected by federal law." (Mot. at 15 (citing *Old Dominion Branch No. 496, Nat. Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 286 (1974)).

The *New York Times* standard for malice is met when the author or publisher "in fact entertained serious doubts as to the truth of his publication . . . or proceeded on in the face of a "high degree of awareness of ... probable falsity." *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1317 (3d Cir. 1994) (citations omitted); *see also Chicago Dist. Council of*

---

[7]Such harm "may include general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state tort law." *Id*. in addition, "the defamed party must establish that he has suffered some sort of compensable harm as a prerequisite to the recovery of additional punitive damages." *Id*. at 66.

*Carpenters Pension Fund v. Reinke Insulation Co.*, 464 F.3d 651, 655 (7th Cir. 2006) (applying the actual malice standard where alleged defamatory statement was made in context of labor dispute). "Before the test of reckless or knowing falsity can be met, there must be a false statement of fact." *Nat. Ass'n of Letter Carriers,* 418 U.S. at 283-84 (citing *Gertz v. Robert Welch, Inc*., 418 U.S., at 339-340)  "[T]o use loose language or undefined slogans that are part of the conventional give-and-take in our economic and political controversies-like 'unfair' or 'fascist'-is not to falsify facts.'" *Id*. at 284 (quoting *Cafeteria Employees Local 302 v. Angelos*, 320 U.S. 293, 295 (1943)). "Expression of [] an opinion, even in the most pejorative terms, is protected under federal labor law." *Id*. In deciding whether the statement in question is a false representation of fact, the court asks whether a "factual representation can reasonably be inferred." *Letter Carriers*, 418 U.S. at 286-287. While the use of "exaggerated rhetoric" is generally protected speech under federal labor law, "there might . . . be situations where the use of this writing or other similar rhetoric in a labor dispute could be actionable, particularly if some of its words were taken out of context and used in such a way as to convey a false representation of fact." *Id*. at 286. *See also Cianci v. New Times Pub. Co*., 639 F.2d 54, 63-64 (2d Cir. 1980) (statements that could reasonably be understood as imputing specific criminal or other wrongful acts to an individual are not constitutionally protected speech and are subject to the actual malice test).[8]

Here, the alleged defamatory statements were made during a meeting held by Divi to express its opposition to the unionization of its workers.  Those circumstances are sufficient to trigger the protections of the NLRA. *Healthcare Ass'n of New York State, Inc. v. Pataki*, 471 F.3d 87, 100 (2d Cir. 2006) (finding that "section 8(c) . . . protect[s] employer speech in the

---

[8] In *Cianci*, the Second Circuit held that a news account asserting that the mayoral candidate had bought his way out of a rape charge were not immunized by the constitutional exception for statements of opinion. *Cianci*, 639 F.2d at 71.

unionization campaign context"). In that context, the Court finds that Henry's accusation that plaintiff's motive in organizing the workers was to steal their union dues can be categorized as "intemperate, abusive and inaccurate statements" or as exaggerated rhetoric that fall within the protection of labor law. *See, e.g., Letter Carriers*, 418 U.S. at 285 (citing instances where the use of terms like blackmail and scab would be understood as a criticism of a position adopted in a labor dispute rather than as accusation of a criminal offense)[9]; *Steam Press Holdings, Inc. v. Hawaii Teamsters, Allied Workers Union, Local 996*, 302 F.3d 998, 1009 (9th Cir. 2002) (statement that owner of company was making money and hiding it in order to draw concessions from union on workers' wages and benefits was a rhetorical device to further union's bargaining strategy and not a statement of fact); *Beverly Hills Foodland, Inc. v. United Food and Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994) (finding that union statement that employer was unfair to black employees was an opinion and not a statement of fact). It is reasonable to assume that the Divi employees would interpret Henry's statement that Nicholas intended to rob them as inflammatory rhetoric intended to persuade them not to join the union rather than as representations of fact. *See, e.g.*, *Steam Press*, 302 F.3d at 1006-1007 (noting that in the course of a labor dispute "an audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric, or hyperbole" and that in the "heated and volatile setting" of a labor dispute, "even seemingly "factual" statements take on an appearance more closely resembling opinion than objective fact" (quoting *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir.1995)).

---

[9] In *Letter Carriers*, the Union had published a leaflet in which it labeled the appellees, non-union member postal workers, as "scabs." Id. at. 266. The Supreme Court recognized that one of the dictionary meanings of scab was traitor but held that no reader of the newsletter would have understood the use of scab to mean that the union had charged the appellees with the criminal offense of treason. *Id*. at 285.

On the other hand, Henry's statement that plaintiff had been terminated for improper or criminal conduct goes beyond a "misrepresentation," "distortion" or "rumor" regarding the plaintiff's motives for organizing Divi employees.  While it may be acceptable to attribute unscrupulous motives or a bad character to one's opponents in a labor dispute, an assertion that an individual has been fired for criminal misconduct goes beyond rumor and insult and is more accurately described as a factual representation rather than an opinion. *See, e.g., Pennsylvania Nurses*, 90 F.3d at 806 (accusation that union had "had been indicted by the United States Attorney's office for election fraud" was a statement of fact); *Cianci*,  639 F.2d at 71 (rejecting argument that a news account asserting that  the mayoral candidate had bought his way out of a rape charge a statement of opinion); *Youssef v. Anvil Intern*, 595 F. Supp. 2d 547, 565-66 (E.D. Pa 2009) (refusing to dismiss defamation claim on grounds that it was opinion where defendant stated that plaintiff was fired for misconduct).

With respect to the statement that Nicholas was terminated, the Court, accepting for purposes of this motion that the statement was false, may reasonably infer that the employer, who allegedly did not fire Nicholas, had knowledge of the falsity.  Thus, Nicholas has established the element of "malice" with respect to the termination statement.  The complaint also alleges injuries stemming from the defamatory statements.  While plaintiff may have shown the requisite elements of a defamatory action under the malice standard, the Court must also consider whether the defamatory acts are preempted by § 301 of the LMRA.

**B.  LMRA Preemption**

Section 301 of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United

> States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The Supreme Court has held that § 301 requires the application of the federal substantive law "in order to ensure uniform interpretation of collective-bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403-404 (1988) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962)). Accordingly, "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted and federal labor-law principles . . . must be employed to resolve the dispute." *Id.* at 405-406. Not "every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is preempted by § 301." *Guerrero v. Hovensa LLC*, No. 06-3593, 2007 WL 4468668, at *3 (3d Cir. 2007) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)). However, "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* (quoting *Allis-Chalmers*, 471 U.S. at 220).

1. **Is the Agreement between the parties a "collective bargaining agreement"?**

Defendants contend that the settlement agreement is a collective bargaining agreement for purposes of § 301. Defendants point out that "collective bargaining agreement" is not defined in the LMRA and argue that a labor contract under § 301 includes any contract "between

an employer and a labor organization representing employees." In this case, the Agreement was negotiated between Divi, Nicholas and the VIWU, which was the labor union representing Divi employees at that time. (Mot. at 5.) Moreover, the contract "regulated the terms and conditions of Nicholas' grievance regarding his separation from employment." (*Id*. at 6.) Plaintiff argues that the Agreement is not a collective bargaining agreement because it was termed a settlement agreement and it was negotiated only on behalf of plaintiff rather than "for the benefit of a substantial number of union members." (Opp. at 7.) Plaintiff also cites the language of the Agreement that provides that it is to be interpreted under the laws of the Virgin Islands rather than federal law. (*Id*. at 8.)

As the Third Circuit has held, "for purposes of section 301, a labor contract need not be a "collective bargaining agreement" per se . . . ." *Beidleman v. Stroh Brewery Co*., 182 F.3d 225, 231 (3d Cir. 1999). "It is enough that [there] is clearly an agreement between employers and labor organizations significant to the maintenance of labor peace between them." *Id*. (quoting *Retail Clerks International Association v. Lion Dry Goods, Inc*., 369 U.S. 17, 28 (1962)). In *Lion Dry Goods*, the Supreme Court elaborated on how it determined that a strike settlement agreement would come within the purview of § 301, though not technically qualifying as a collective bargaining agreement:

> [The contract] came into being as a means satisfactory to both sides for terminating a protracted strike and labor dispute. Its terms affect the working conditions of the employees of both respondents. It effected the end of picketing and resort by labor organizations to other economic weapons, and restored strikers to their jobs. It resolved a controversy arising out of, and importantly and directly affecting, the employment relationship. Plainly it falls within § 301(a).

*Lion Dry Goods*, 369 U.S. at 28.

In the wake of *Lion Dry Goods*, courts have generally recognized that § 301 may apply to labor agreements other than collective bargaining agreements. *See, e.g., Beidleman*, 182 F.3d at 231 (finding that a strike settlement agreement, which was "entered into by the employer and the labor unions to establish labor peace, and . . . resolved a controversy arising out of the employment relationship" was a collective bargaining agreement for purposes of § 301); *American Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co*., 62 F.3d 574, 580 (3d Cir. 1995) (finding that the settlement agreement concerning the terms of a pension plan was an agreement between an employer and a union, and thus a labor agreement); *Karnes v. Boeing Co*., 335 F.3d 1189, 1197-98 (10th Cir. 2003) (finding that a settlement agreement on behalf of individual employee was between union and employer and thus within purview of § 301); *Davis v. Bell Atlantic-West Virginia, Inc*., 110 F.3d 245, 249 (4th Cir. 1997) (finding that because "the settlement agreement [was] merely a particular expression of rights and duties created by a collective-bargaining agreement . . . § 301 preempts an alleged breach of the Union-negotiated agreement that settled an employee grievance."); *Amalgamated Meat Cutters and Butcher Workmen of North America, Local 195, AFL-CIO v. M. Feder & Co*., 234 F. Supp. 564, 567-68 (ED. Pa. 1964) (settlement agreement reached by union on behalf of employee pending arbitration of grievance was a labor contract); *Crowne Investments, Inc. v. United Food and Commercial Workers, Local No. 1657*, 959 F. Supp. 1473, 1477-78 (M.D. Ala.1997) (finding that the settlement agreement that "was entered into between an employer and a union to resolve an unfair labor practice charge in which it was alleged that an employee had been discriminatorily discharged because of union advocacy" was a § 301 contract); *but see Davis v. Ohio Barge Line, Inc*., 697 F.2d 549, 551-52 (3d Cir. 1983) (holding that settlement agreement between terminated employee and employer was not a labor contract).[10]

---

[10] In *Davis*, the plaintiff alleged that the union approved the settlement agreement although it failed to sign it. *Id*. at

Based on Supreme Court and Third Circuit precedent, as well as persuasive law from other circuits, the Court concludes that a settlement agreement is a labor contract for purposes of § 301 when the union is involved in negotiating the agreement on behalf of the employee and the agreement is intended to peacefully resolve an issue arising from the employment relationship. There is no question here that parties who entered into the Agreement are VIWU, Nicholas and Divi.[11] The Agreement is intended to resolve "differences relating to Nicholas' employment and separation thereof without the need for resolution of the [Unfair Labor Practice charge filed by Nicholas against Divi] or any other litigation." (Mot. Ex. 1 ¶ 2.) The Agreement's purpose was "to solely buy peace and to resolve disputed claims . . . ." (Id. ¶ 3.) Divi agreed to pay a sum of money, which appears to be related to the wages plaintiff alleged were withheld, and both the VIWU and Nicholas agreed to release Divi from any and all claims which they may have arising out of Nicholas' employment with Divi. (Id. ¶¶ 2-3). The Court can find little to distinguish this matter from facts before the Third Circuit in *Beidleman*. As in *Beidleman*, the Agreement was entered into by the employer and labor union, as well as Nicholas, to establish or buy peace and to resolve a controversy arising out of an employment relationship. The Court also finds persuasive the reasoning in *Crowne Investments, Inc. v. United Food and Commercial Workers, Local No. 1657*, a case decided by the district court of Alabama. The settlement agreement in

---

553. The Third Circuit found that the agreement was not a labor contract noting that "[a] private agreement between an employer and employee independent of a collective bargaining agreement generally does not fall within section 301(a) even though the complaint alleges some nexus with the union." *Id*. The Court of Appeals emphasized that "mere approval" by the union was not sufficient to warrant treating the settlement agreement as a section 301 contract. *Id*. at 554. The Court notes that Davis can be distinguished from the instant case because here, the union did not merely approve the Agreement but was a signatory to it and indicated that it represented Nicholas.

[11] The first paragraph of the Agreement provides:

> This is a Settlement Agreement and General Release ("Agreement") between the Virgin Islands Workers Union, AFL-CIO-CLC, Local 611 ("VIWU") on behalf of its member Charlesworth Nicholas ("Nicholas"), Nicholas, and the Grapetree Shores, Inc. d/b/a Divi Carina Bay Resort ("Divi"), referred to hereinafter as "the Parties" . . . .

(Mot. Ex. 1, Settlement Agreement and General Release.)

that case was negotiated under nearly identical circumstances. The plaintiff had filed a unfair labor practice alleging that she had been unlawfully discharged in retaliation for union advocacy. *Crowne Investments, Inc*, 959 F. Supp. at 1475. Subsequently, plaintiff, the union representing plaintiff and the employer entered into a "Release and Settlement Agreement" by which plaintiff agreed to withdraw her unfair labor practice and the employer agreed to pay a sum of money. *Id*. After plaintiff brought suit for breach of the agreement, the district court determined that it was labor contract for purposes of § 301 because it was "a contract between a labor union and an employer which was significant to the maintenance of labor peace between them." *Id*. at 1477-78.

Plaintiff relies on the Supreme Court case *Caterpillar v. Williams* to support his contention that the Agreement is a contract between Nicholas and Divi rather than a CBA. However, the Court finds *Caterpillar* to be inapposite here. In *Caterpillar*, the employees asserted that Caterpillar breached the employment contract that the employees had entered into while they were in managerial or salaried positions and were not union members. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 388-389 (1987). At the time the employees brought suit, they had been downgraded to a position that was represented by the union. *Id*. at 389. Caterpillar argued that their claims were preempted by § 301 because the individual employment contracts were, under federal law, merged into and superseded by the collective bargaining agreement. *Id*. at 390. The Supreme Court noted that the collective-bargaining agreement played no part in the contractual agreements made by the employees while they were in managerial or weekly salaried positions. *Id*. at 395 n.9. The Supreme Court ultimately rejected Caterpillar's position, holding that "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights

independent of that agreement, including state-law contract rights, so long as the contract relied upon is not a collective-bargaining agreement." *Id*. at 397.

The Agreement in this case, cannot be likened to the individual employment contracts entered into by the Caterpillar employees. Nicholas was represented by VIWU when he entered into the Agreement, and VIWU was a party to the Agreement. The fact that the Agreement did not represent the interest of other union members is insufficient to consider it an individual employment contract rather than a labor agreement. *See, e.g., Amalgamated Meat Cutters*, 234 F. Supp. at 566 (rejecting defendant's argument that the settlement agreement was "not within § 301(a) because it is 'uniquely personal' to the employee" and "is related only incidentally if at all, to the collective bargaining agreement.").[12] The Court concludes that the settlement agreement is a labor contract for purposes of § 301. However, preemption will not be warranted unless the Court determines that the resolution of plaintiff's claims is "substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, 482 U.S. at 394.

### 2. Are plaintiff's claims founded directly on rights created by the Agreement or substantially dependent upon an analysis of the Agreement?

Plaintiff alleges that defendants' statement that he was terminated violated the terms of the Agreement in breach of a territorial and federal contract. (Compl. ¶¶ 12-13; 26-27.) The

---

[12] In *Meatcutters*, the plaintiff brought suit under § 301 sought to enforce a settlement agreement which solely involved the plaintiff and which had been arrived at during arbitration proceedings invoked by the union. *Id*. at 565. In rejecting defendant's argument about that an agreement could not be deemed a labor contract under § 301 because it was "uniquely personal," the district court quoted the following passage from the Supreme Court case *Smith v. Evening News Association*:

> Individual claims lie at the heart of the grievance and arbitration machinery, are to a large degree inevitably intertwined with union interests and many times precipitate grave questions concerning the interpretation and enforceability of the collective bargaining contract on which they are based. To exclude these claims from the ambit of § 301 would stultify the congressional policy of having the administration of collective bargaining contracts accomplished under a uniform body of federal substantive law.

*Id*. at 566 (quoting *Smith*, 371 U.S. 195, 200 (1962).

Court finds that plaintiff's claim for breach of contract claim necessarily involves an interpretation of the settlement agreement. Having found that the Agreement is a labor contract, the Court concludes that this claim is preempted by § 301.

Defendants also contend that plaintiff's tort claims require an analysis of the Agreement. Tort claims are also subject to preemption under § 301. *See Allis-Chalmers*, 471 U.S. at 211 ("questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort."). "Section 301 does not, however, 'pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.'" *Pennsylvania Nurses Ass'n v. Pennsylvania State Educ. Ass'n*, 90 F.3d 797, 807 (3d cir. 1996) (quoting *Allis-Chalmers*, 471 U.S. at 212). "Only state-law rights and obligations that depend upon an interpretation of the collective bargaining agreement are preempted." *Id*.

The defamatory statement at issue here concerns Henry's assertion that Nicholas was terminated for misconduct. The complaint alleges that "[t]he false statements that Plaintiff was terminated were a direct violation of [the] Settlement Agreement" wherein Divi had agreed to treat Nicholas' separation from employment as a voluntary resignation. (*Id*. ¶¶ 12-13.) Defendants contend that the Court cannot determine whether the statement that Nicholas had been terminated constitutes defamation without consulting the Agreement. Plaintiff argues that the alleged defamatory statements are not "substantially" dependent on the Agreement and that the falsity of the statement that Nicholas was terminated does not rest solely on the terms of the Agreement.

Under Virgin Islands law, a plaintiff states of claim for a defamation where he alleges

> (1) a false defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

*Ali v. Intertek Testing Services Caleb Brett*, 332 F. Supp. 2d 827, 831 (D.V.I. 2004) (citing *Ross v. Bricker*, 770 F. Supp. 1038, 1042 (D.V.I. 1991); *see also* Restatement (Second) of Torts § 558 (1977)). The parties, focused on element one, debate whether the falsity of the termination statement can be proven without substantial reliance on the Agreement. Whether or not the Agreement substantiates plaintiff's claim of falsity, plaintiff relies on it in arguing that the statement was false. The Court concludes that the Agreement is not merely tangential to Nicholas' claims. Instead, the Court will be required to interpret the meaning of its terms. Thus, defendant's defamation claim must be treated as a claim brought under § 301. *See, e.g., Peek v. Philadelphia Coca-Cola Bottling Co*., Civ. No. 97-3372, 1997 WL 399379, at *4 (E.D. Pa. July 10, 1997) (defamation claims preempted by § 301 where allegations "overwhelmingly relate to conduct that formed the substance of plaintiff's grievance and arbitration proceedings").

Nicholas' claim for emotional distress also rests on the disparaging statements made by Henry. A claim for IIED requires the plaintiff to allege facts showing that the defendants engaged in "extreme and outrageous conduct" to "intentionally or recklessly causes severe emotional distress to another...." *Eddy v. Virgin Islands Water and Power Authority*, 955 F. Supp. 468, 478 (D.V.I.1997) (citing Restatement (Second) of Torts, § 46). To successfully plead negligent infliction of emotional distress, plaintiff must allege that "the defendant's negligent conduct placed him or her in danger and that the plaintiff suffered substantial physical harm to their persons as a result. *Smith v. Virgin Islands Housing Authority*, Civ. No. 09-cv-00011, 2011 WL 797373, at *8 (D.V.I. Feb. 28, 2011) (citing *Int'l Islamic Cmty. of Masjid*

*Baytulkhaliq, Inc. v. United States*, 981 F. Supp. 352, 370 (D.V.I. 1997)). The Court need not resolve the question of whether these claims are preempted by § 301 because it finds that plaintiff has failed to state a claim for either cause of action. As the Court has previously held, when the gravamen of the IIED complaint sounds in defamation, an independent action for intentional infliction of emotional distress cannot lie. *Ali v. Intertek Testing Services Caleb Brett*, 332 F. Supp. 2d 827, 831 (D.V.I. 2004) (citations omitted). In this case, the IIED claim rests entirely on the defamatory statements alleged. Moreover, the Court finds that the conduct of the defendants does not rise to the level of outrageousness required to sustain an IIED claim. *Bostic v. AT&T of Virgin Islands*, 2003 WL 25322909, at *7 (D.V.I. April 16, 2003) (quoting *Heywood v. Cruzan Motors, Inc*., 792 F.2d 367, 371 (3d Cir.1986) (to prevail on an IIED claim, "[t]he challenged behavior must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."). With regard to the NIED claim, plaintiff has failed to allege that defendants placed him in physical harm such that this claim must also fail.

### 3. Must Nicholas' claim be dismissed for failure to allege a claim against the VIWU?

The Court now addresses the question of whether the failure to sue the union is fatal to plaintiff's remaining claims for breach of contract and defamation. "It has long been established that an individual employee may bring suit against his employer for breach of a collective bargaining agreement." *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 163 (1983) (citing *Smith v. Evening News Assn*., 371 U.S. 195 (1962)).[13] "Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the

---

[13]In *Smith*, the Supreme Court held that § 301 did not exclude all suits brought by employees instead of unions. *Smith*, 371 U.S. at 200.

collective bargaining agreement." *Id*. (citing *Republic Steel Corp. v. Maddox*, 379 U.S. 650 (1965)). But the employee is not bound by those remedies where "the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id*. at 164. Under those circumstances, the employee may bring a hybrid action in court against both the employer and the union "notwithstanding the outcome or finality of the grievance or arbitration proceeding." *Id.* (citing *Vaca v. Sipes*, 386 U.S. 171). While defendants are correct that a plaintiff bringing a § 301 claim is ordinarily required to allege that the union breached its duty of fair representation, such a requirement stems from the provisions in a collective bargaining agreement that provide for the union to engage in a grievance procedure on behalf of its representatives. *Hines v. Anchor Motor Freight, Inc*., 424 U.S. 554, 562-563 (1976) (an employee must attempt to utilize the grievance machinery provided in the labor contract before bringing an independent suit against the employer in a district court); *Republic Steel*, 379 U.S. at 653 (the employee must afford the union the opportunity to act on his behalf unless the contract provides otherwise); *Anderson v. AT&T Corp.* 147 F.3d 467, 473 (6th Cir.1998) (recognizing "situations in which individual plaintiffs . . . may nonetheless sue an employer for breach of a collective bargaining agreement without also suing the union" such as when plaintiff is a third party beneficiary of a CBA and not represented by the union).

Upon reviewing the Agreement, the Court cannot identify any provision that requires the parties to follow a grievance procedure or that requires the VIWU to represent plaintiff in filing a claim for breaches stemming from the Agreement. Moreover, neither party makes any reference to a collective bargaining agreement that governs the resolution of disputes between Divi

employees and the union.[14]  Thus, the Court concludes that Nicholas is entitled to bring his breach of contract and defamation claim against Divi without simultaneously alleging breach of the duty of fair representation against the VIWU.

### IV. Conclusion

For the reasons stated above, the Court finds that plaintiff's claims for IIED and NIED must be dismissed for failure to state a claim. Plaintiff's remaining claims for defamation and breach of contract are preempted by § 301 of the LMRA.  Because the settlement agreement did not provide for any grievance mechanism involving the union, plaintiff's failure to bring a claim against the union is not fatal to his complaint. Thus, plaintiff's claim of breach of contract and defamation under § 301 may proceed.  Accordingly, it is hereby **ORDERED** that the defendants' motion to dismiss plaintiff's claims for IIED and NIED for failure to state a claim is **GRANTED**; the motion to dismiss plaintiff's claims for defamation and breach of a federal contract is **DENIED**.

ENTER:

Dated: June 22, 2011

_____/s/_____
RAYMOND L. FINCH
SENIOR U.S. DISTRICT JUDGE

---

[14] The Court notes that in support of defendants' motion to compel arbitration, the defendants relied on an Hourly Employment Agreement between Nicholas and Grapetree.  The employment agreement made no reference to the VIWU or any other union representative.