NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT

## DISTRICT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

Charlesworth NICHOLAS,

        Plaintiff,

v.

GRAPETREE SHORES, INC. d/b/a DIVI
CARINA BAY RESORTS, et al.,

        Defendants.

Civ. No. 05-119

ORDER

THOMPSON, U.S.D.J.

    For the reasons stated in this Court's Opinion on this same day,

    IT IS on this 21st day of March, 2013,

    ORDERED that the Motion to Disqualify Plaintiff's Counsel, (Docket Entry No. 156),
filed by Defendants is DENIED; and it is

    ORDERED that the Motion to Disqualify Charles Engeman and the Ogletree Deakins
Firm From Acting as Defense Counsel, (Docket Entry No. 220), filed by Plaintiff is DENIED;
and it is

    ORDERED that the Motion to Disqualify Counsel Rohn Based on Undisclosed Hiring of
Julie Beberman, Esq., (Docket Entry No. 239), filed by Defendants is DENIED.

                        ANNE E. THOMPSON, U.S.D.J.

1

NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT

## DISTRICT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

| | |
|---|---|
| Charlesworth NICHOLAS,<br><br>             Plaintiff,<br><br>v.<br><br>GRAPETREE SHORES, INC. d/b/a DIVI<br>CARINA BAY RESORTS, et al.,<br><br>             Defendants. | Civ. No. 05-119<br><br><br>OPINION |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

These matters have come before the Court upon three motions to disqualify counsel. Defendants Grapetree Shores, Inc. d/b/a Divi Carina Resorts ("Divi") and Patrick Henry ("Henry") (collectively, "Defendants") filed two motions to disqualify Plaintiff's counsel. (Docket Entry Nos. 156, 239). Plaintiff Charlesworth Nicholas ("Plaintiff") opposes both motions. (Docket Entry Nos. 160, 195, 241). Plaintiff also moved to disqualify Defendants' counsel. (Docket Entry No. 220). Defendants oppose the motion. (Docket Entry No. 233). The Court has decided these matters upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons given below, the motions to disqualify are denied.

1

## II.  BACKGROUND

These matters concern whether Plaintiff's counsel Lee J. Rohn and Associates, LLC ("Rohn & Associates") must be disqualified from representing Plaintiff and whether Defendants' counsel Ogletree, Deakins, Nash, Smoak & Stewart, LLC ("Ogletree") must be disqualified from representing Defendants in this defamation and breach of contract case.  The Court assumes the parties' familiarity with the underlying facts in this case and summarizes briefly those facts relevant to the Court's decision.

### A.  Initiation of Lawsuit

In July 2005, Plaintiff initiated this lawsuit in the Superior Court of the Virgin Islands. (Docket Entry No. 1).  The case was then removed to federal court on August 17, 2005.  (*Id.*). On December 6, 2010, Plaintiff filed an amended complaint, bringing claims against Defendants for breach of contract, defamation, and intentional infliction of emotional distress.  (Docket Entry No. 60).  A second amended complaint ("Second Amended Complaint") was filed on January 28, 2011.  (Sec. Am. Compl., Docket Entry No. 68).  Only Plaintiff's defamation and breach of contract claims survived Defendants' motion to dismiss.  (Docket Entry No. 82).

### B.  Plaintiff's Defamation & Breach of Contract Allegations

At the time of the events giving rise to Plaintiff's claims, Plaintiff was a former employee of Divi and the acting president of the Virgin Islands Workers Union.  (*See* Sec. Am. Compl., Docket Entry No. 68 at ¶ 12).  In his work for the union, Plaintiff was attempting to unionize Divi's employees despite its resistance to unionization.  (*Id.* at ¶¶ 5-6).

On June 22, 2005, Divi held a meeting with nearly all of its employees.  (*Id.* at ¶¶ 9, 10). At this meeting, Henry, an employee of Divi, allegedly accused Plaintiff of stealing money from the union, claimed Plaintiff only sought to unionize Divi's employees in order to steal their union

2

dues, accused Plaintiff of being a disgruntled former employee seeking revenge against the hotel, claimed to have a file of information documenting Plaintiff's bad acts, inferred that a number of those bad acts were criminal, and claimed that Plaintiff was indebted to a number of people. (*Id*.). Plaintiff claims these statements were made in retaliation for Plaintiff's prior litigation and union organizing work. (*Id*. at ¶ 10).

According to Plaintiff, this speech by Henry was defamatory and also violated a settlement agreement entered into by Plaintiff and Divi approximately two and a half years earlier. (*Id*. at ¶ 13). The settlement agreement required Divi to "treat [Plaintiff's] separation from employment as a voluntary resignation and . . . remove the documentation concerning termination from his personnel file." (*Id*. at ¶ 12). Based on these allegations, Plaintiff claims he in entitled to relief for defamation and breach of contract.

### C. First Motion to Disqualify Plaintiff's Counsel Rohn & Associates

On January 31, 2012, Defendants moved to disqualify Plaintiff's counsel Rohn & Associates from representing Plaintiff in this matter. (Docket Entry No. 156). Defendants argue disqualification is necessary because Rohn & Associates employed Talib Ellison ("Ellison"), an attorney who had previously been employed as an associate at Ogletree for a short period of time and, in that capacity, worked for Divi on two substantially related matters. (*Id*.).

Ellison began working for Ogletree as an associate in September 2010, having just been admitted to practice law in the Virgin Islands. (Engeman Cert., Docket Entry No. 157, Attach. 1 at ¶ 2; Ellison Cert., Docket Entry No. 160, Attach. 8 at ¶ 1). During his employment at Ogletree, Ellison was assigned to represent Divi in two employment cases: (1) *Hamilton v. Divi*, an employment arbitration case alleging breach of contract and intentional infliction of demotional distress in which he billed 18.3 hours; and (2) *Mitchel v. Divi*, an employment

3

arbitration case alleging wrongful discharge, breach of contract, and defamation in which he billed 37.6 hours.  (*Id*. at ¶ 3).

On October 7, 2011, Ellison took a paid leave of absence from Ogletree and, on October 26, 2011, informed the firm that he would be resigning effective November 4, 2011.  (Engeman Cert., Docket Entry No. 157, Attach. 1 at ¶ 4; Pl.'s Br., Docket Entry No. 160 at 3).  If appears Ellison contacted Rohn & Associates on October 11, 2011 to discuss the possibility of being hired, and an in-person offer was extended on October 18, 2011.  (Docket Entry No. 160, Exs. 1, 2).  Ellison began working for Rohn & Associates on November 14, 2011 (a week early because Ogletree had released him from employment early).  (*See* Docket Entry No. 160, Ex. 2).  Under the terms of his employment agreement with Rohn & Associates, Ellison was hired for an initial probationary period, and continued employment was conditioned on the resolution of any potential conflicts of interest.  (*Id*.).

On November 10, 2011, Ellison contacted Charles Engeman ("Engeman"), an attorney at Ogletree, about resolving any potential conflicts of interest.  (Docket Entry No. 160, Ex. 4).  Engeman responded that Ellison was expected to comply with the appropriate rules of professional conduct and to create appropriate screening mechanisms pursuant to those rules. (*Id*.).

On December 16, 2011, Ellison sent another email to Engeman informing him that Ellison would begin working at Rohn & Associates effective December 19, 2011.  (Engeman Cert., Docket Entry No. 157, Attach. 1, Ex. 2).  In the email, he included a draft conflicts letter and a list of cases Rohn & Associates purported to have against Ogletree.  (Engeman Cert., Docket Entry No. 157, Attach. 1, Exs. 3, 4).  This case was not included on that list.  (*Id*.).

4

In response, Engeman questioned Ellison regarding his start date.  (Engeman Cert., Docket Entry No. 157, Attach. 1, Ex. 2).  Lee Rohn ("Rohn"), an attorney at Rohn & Associates, responded to Engeman's email and confirmed that Ellison had, in fact, been working for Rohn & Associates prior to that time, but "on a contractor basis."  (Id.).

In a follow-up email on January 11, 2011, Engeman requested additional information. (Id.).  That same day, attorney Geoffrey Wolfe ("Wolfe") from Rohn & Associates emailed Engeman a list of cases that Ellison had worked on for Rohn & Associates and explained that Ellison had also performed "limited case research on a variety of topics" that had been incorporated into various motions.  (Docket Entry No. 157, Attach. 1, Ex. 5).

In mid-January, Rohn & Associates apparently rescinded Ellison's job offer.  (Def.'s Br., Docket Entry No. 157 at 8).  During his time working for Rohn & Associates, Ellison worked remotely from Saint Thomas (Rohn & Associates is located in Saint Croix) on specific assignments.  (Tr., Docket Entry No. 192 at 99:1-14).  He did not have access to Rohn & Associates' files and never spoke with the attorney assigned to work on the instant case for Rohn & Associates.  (Tr., Docket Entry Nos. 191 at 145:1-14, 192 at 98:8, 99:1-14).

In their motion to dismiss, Defendants argue that disqualification is necessary because, as an associate at Ogletree, Ellison worked on two substantially related cases: Hamilton and Mitchel.  (See Docket Entry No. 157).  In April 2012, Magistrate Judge George Cannon conducted a three-day hearing on the motion.  (Docket Entry Nos. 180, 181, 182).  During the hearing, a dispute arose over a subpoena duces tecum issued to Rohn concerning the motion to disqualify.  Defendants contended that Rohn had not fully complied with the subpoena duces tecum and subsequently sought enforcement of the subpoena in a motion to compel compliance with the subpoena filed on May 22, 2012, (Docket Entry No. 199), and a motion for an order to

show cause why Rohn should not be held in contempt filed August 22, 2012.  (Docket Entry No. 230).  Additional hearings on the matter were held by telephone before this Court on February 15, 2013, and in person before Judge Cannon on March 8, 2013.  (*See* Docket Entry Nos. 256, 267).

### D.  *Motion to Disqualify Defendants' Counsel Ogletree*

On July 26, 2010, Plaintiff moved to disqualify Defendants' counsel Ogletree. According to Plaintiff, he learned through discovery that Ogletree was involved in preparing the allegedly defamatory speech given by Henry on June 22, 2005.  (Docket Entry No. 220 at 3). Specifically, Plaintiff contends that Ogletree was acting as Divi's legal counsel in June 2005 and one of its attorneys, John McFall, drafted the speech.  (*Id.*).  Engeman and Henry then "went through each sentence" to ensure that the speech was factually correct.  (*Id.*).  Engeman also apparently ordered a transcript of a related National Labor Relations Board hearing involving Nicholas and distributed it to Divi's workers.  (*Id.*).  Plaintiffs contend that because Henry is dead, "the only person who can testify about the fact-checking process and the basis for the speech's 'accuracy' is Engeman."  (*Id.*).

### E.  *Second Motion to Disqualify Plaintiff's Counsel Rohn & Associates*

On October 5, 2012, Defendants moved to disqualify Plaintiff's counsel Rohn & Associates based on its undisclosed hiring of Julie Beberman ("Beberman").  (Docket Entry Nos. 239, 240).  Beberman is an attorney in the Virgin Islands who has repeatedly moved between Rohn & Associates and Judge Finch, a District Judge in the District Court of the Virgin Islands. From 1996 to 1998, Beberman served as a law clerk for Judge Finch and then, following her clerkship, worked as an associate for Rohn & Associates from 1999 to 2000.  (Docket Entry No.

240 at 1 n. 1).  Beberman then returned to work for Judge Finch, serving as a career law clerk from November 15, 2001 until January 15, 2010.  (*Id*. at 1).

The instant litigation was pending before Judge Finch from the time it was filed in November 2005 until she left Judge Finch's chambers in January 2010.  (*Id*. at 1-2).  During this time, two orders were entered by Judge Finch bearing Beberman's initials.  (*Id*. at 2).  The first was an order dated October 16, 2007 that granted a motion for an extension of time to comply with Rule 56(f) made by Plaintiff.  (*Id*.).  The second was entered on July 24, 2008 and denied Defendants' motion to stay to allow arbitration.  (*Id*.).

Shortly after leaving Judge Finch's chambers, Beberman entered into a contract to work for Rohn & Associates.  (*Id*.).  This "Independent Contractor Agreement" (the first of two) was dated May 27, 2010, and provided that Beberman would work as a contractor for the firm on an "ongoing, as needed, per project term commencing on June 1, 2010" for an hourly rate of $80. (*Id*. at 2-3).  According to Plaintiff, Beberman worked in this capacity on five cases during 2010. (Docket Entry No. 241, Attach. 2 at ¶ 2).  She did not work on any cases for Rohn & Associates during 2011.  (*Id*. at ¶ 3).

On December 21, 2011, Beberman entered into a second Independent Contractor Agreement with Rohn & Associates.  (*Id*. at ¶ 4).  This contract contained nearly identical language but provided for an increased hourly rate of $95.  (Docket Entry No. 241 at 2). Beberman worked only on two cases for Rohn & Associates during 2012.  (Docket Entry No. 241, Attach. 2 at ¶ 4).  This case was not one of those two cases.

During the course of her employment with Rohn & Associates in 2010 and 2012, Beberman performed discrete legal research assignments and was provided with information about only those cases she was working on.  (*Id*.).  She did not have general access to the

physical files at Rohn & Associates nor did she have an office at the firm. (*Id.*). Furthermore, she did not discuss any cases with any member of the firm that were unrelated to the specific assignments she was given. (*Id.*).

### III. ANALYSIS

"The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings; the purpose of granting such motions is to eliminate the threat that the litigation will be tainted." *Lamb v. Pralex Corp.*, 333 F. Supp. 2d 361, 363 (D.V.I. July 12, 2004) (citing *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). "Disqualification issues must be decided on a case by case basis and the party seeking disqualification of opposing counsel bears the burden of clearly showing that the continued representation would be impermissible." *Id.* at 364.

"A motion to disqualify counsel requires the court to balance the right of a party to retain counsel of his choice and the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system." *Id.* (citing *Powell v. Alabama*, 287 U.S. 45, 53 (1932)); *Smith v. V.I. Water and Power Auth.*, 2007 WL 5794433, at *2 (D.V.I. Dec. 19, 2007) (explaining that the balancing test also entails consideration of an attorney's freedom to practice law without excessive restrictions). "Because motions to disqualify seek to deprive the opposing party of their counsel of choice, and may be motivated by tactical concerns, they are generally not favored." *Jackson v. Rohm & Hass*, 2008 U.S. Dist. LEXIS 65632, at *5 (E.D. Pa. Aug. 26, 2008) (citations omitted). Indeed, "[i]t is well established that '[m]otions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely

necessary.'" *Prosser v. Nat'l Rural Utils. Co-op Fin. Corp.*, No. 08-107, 2009 WL 1605637, at
*2 (D.V.I. June 8, 2009) (citations omitted).

 In the Virgin Islands, the Model Rules of Professional Conduct ("MRPCs") govern the
professional responsibilities of practicing attorneys. *Mathurin v. Sun Contractors, Inc.*, No. 05-
183, 2012 WL 3646734, at *2 (D.V.I. Aug. 27, 2012) (citations omitted). The Court now
considers the application of these rules to the present case, addressing the arguments made in
each of the three motions to disqualify in the order each motion was made.

 *A. First Motion to Disqualify Plaintiff's Counsel Rohn & Associates*

 Defendants first move to disqualify Plaintiff's counsel under MRPC 1.9. MRPC 1.9
governs a lawyer's duties to former clients. MRPC 1.9. The Rule provides that

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent
> another person in the same or a substantially related matter in which that person's
> interests are materially adverse to the interests of the former client unless the former
> client gives informed consent, confirmed in writing.

MRPC 1.9(a). To determine whether an attorney should be disqualified under Rule 1.9(a), the
Court considers (1) whether the party seeking disqualification is a "former client"; and (2)
whether the subject matter of the present lawsuit is "the same or substantially related" to the
matter in which the attorney represented the former client. *In re Corn Derivatives Antitrust
Litig.*, 748 F.2d 157, 162 (3d Cir. 1984).

 Cases are "substantially related" if they "involve the same transaction or legal dispute or
if there otherwise is a substantial risk that confidential factual information as would normally
have been obtained in the prior representation would materially advance the client's position in
the subsequent matter." MPRC 1.9 cmt. 3. Furthermore, the scope of the matter depends on "the
facts of a particular situation or transaction." MRPC 1.9 cmt. 2. "When a lawyer has been
directly involved in a specific transaction, subsequent representation of other clients with

9

materially adverse interests in that transaction clearly is prohibited." *Id.* However, "a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a factually distinct problem of that type even though the subsequent representation involves a position adverse to the prior client." *Id.* "Thus, a lawyer may master a particular substantive area of the law while representing a client, but that does not preclude a lawyer from representing another client adversely to the first in a matter involving the same legal issues, if the matters factually are not substantially related." RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 132, cmt. h.

In this case, it is clear that Rohn & Associates has not taken the necessary precautions required by the MRPCs when hiring a new lawyer. Rohn simply offered Ellison employment and then passively did nothing to make it possible for him to work with the firm. She blames Engeman for failing to help Ellison with his conflicts, however, she did nothing to help Ellison or to screen him. While a number of factors, including Ellison's status as an entry-level associate at Ogletree and the fact that he worked remotely and was never fully integrated into Rohn & Associates are helpful to Rohn, it is clear that she needs to take more seriously her professional responsibilities when she is hiring new lawyers.

Despite these failings on Rohn's part, Defendants have not sustained their burden of showing that disqualification of Rohn & Associates is necessary in this case. First, it is important to note that this is not a case where an attorney is accused of working for a party on a matter and then leaving to work for the opposing party in the same matter.[1] Instead, Defendants contend that Ellison worked on behalf of Divi while at Ogletree and then worked against Divi for Rohn & Associates on a substantially related matter. Defendants have not shown, however, that

---

[1] There is no showing that Ellison worked on this case at Ogletree and Ellison denies that he in any way worked on this case while at Rohn & Associates.

this case is substantially related to either *Hamilton* or *Mitchell*, the two cases that Ellison worked on for Divi while he was employed by Ogletree.

Defendants expect the Court to infer that because Ellison worked on two employment cases involving Divi, the cases are substantially related to this matter. In other words, Defendants hinge their argument on the fact that the cases involve similar legal issues. However, Ellison is not precluded from representing an adversary in a matter against Divi simply because the case involves the same legal issues if the matters *factually* are not substantially related. Defendants have not shown that the cases Ellison worked at Ogletree are factually similar to the present case such that there is a substantial risk that Ellison obtained confidential factual information in those cases that would materially advance Plaintiff's position in this case. Furthermore, the Court is not persuaded that Plaintiff's effort to gain information about other cases, including *Hamilton* and *Mitchel*, in an attempt to fashion an argument that Divi engaged in a pattern and practice of behavior is sufficient to deem these cases substantially related. As such, Defendants' motion to disqualify Plaintiff's counsel on the basis of Rohn & Associates' affiliation with Ellison is denied.

B. *Motion to Disqualify Defendants' Counsel Ogletree*

Plaintiff argues that disqualification of Defendants' counsel is necessary under both MRPC 1.7 and MRPC 3.7. Defendants denounce Plaintiff's motion as a "pathetic, untimely and transparent attempt [to] retaliate against Divi for filing the [first] Motion to Disqualify Rohn and raising issues of Attorney Rohn's apparent perjury, contempt of court, and violations of her ethical obligations . . . ." (Docket Entry No. 233 at 6). After reviewing the parties' submissions, the Court is inclined to agree that this motion smacks of retaliation.

11

### 1. MRPC 1.7

MRPC 1.7 governs a lawyer's duties to current clients.  MRPC 1.7.  The Rule provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."  *Id*.  A concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer."  MPRC 1.7(a)(2).

Notwithstanding the existence of a concurrent conflict of interest, a lawyer may represent a client in certain circumstances.  MPRC 1.7(b).  Representation despite a concurrent conflict of interest is permissible if (1) "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;" (2) "the representation is not prohibited by law;" (3) the lawyer is not representing two adversaries in the same litigation; and (4) "each affected client gives informed consent, confirmed in writing."  *Id*.

In this case, Plaintiff contends that disqualification of Defendants' counsel is necessary because Defendants' counsel is "personally interested in the outcome of the case" and is, therefore, "not in a position to give Divi detached advice about litigation decisions of settlement possibilities . . . ."  (Docket Entry No. 220 at 7).  Specifically, Plaintiff claims that "[i]f Divi loses, it will likely have a claim against Engeman and [Ogletree] for malpractice because [they] were responsible for drafting the speech at issue and verifying the facts."  (*Id*.).  Therefore, "[b]oth settlement and litigation advice would appear to be tainted by the specter that the advice could be given to cover [Ogletree's] own malpractice and misconduct."  (*Id*.).  Furthermore, Plaintiff contends that this conflict impacts Plaintiff "because his chance of receiving a fair settlement short of a full trial on the merits is diminished if [Ogletree's] settlement advice is tainted by its desire to insulate itself from liability."  (*Id*. at 8).

Plaintiff simply has not shown, however, that Ogletree's role in fact-checking Henry's speech gives rise to a conflict of interest between Defendants and either Ogletree or Engeman. Specifically, Plaintiff has not provided any evidence to support his contention that Ogletree was negligent in fact-checking Henry's speech. Furthermore, when a party seeks disqualification of opposing counsel on the basis of an alleged conflict of interest between opposing counsel and his client, that party lacks standing unless he can show "an ethical breach that so infects the litigation . . . that it impacts the moving party's interest in a just and lawful determination of her claims." *Prosser v. Nat'l Rural Utils. Co-op. Fin. Corp.*, No. 08-107, 2009 WL 1605637, at *2 (D.V.I. June 8, 2009). Plaintiff's largely unsupported contention that his chance of receiving a fair settlement or trial on the merits is diminished simply does not rise to this level.

    *2. MRPC 3.7*

Plaintiff next argues that disqualification is necessary under MRPC 3.7. MRPC 3.7 generally prohibits lawyers from representing clients in cases where the lawyer is likely to be a necessary witness. MRPC 3.7. The Rule provides in relevant part that

> a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

MRPC 3.7(a). "An attorney's testimony is deemed necessary if he has crucial information in his possession which must be divulged." *Velger v. Carr*, No. 10-42, 2012 WL 684748, at *2 (D.V.I. Feb. 29, 2012) (internal quotations omitted). However, "[e]vidence which may be obtainable elsewhere, or which is considered cumulative, will not be deemed 'necessary.'" *Id*. It is incumbent on the party seeking disqualification to establish the necessity of the testimony from the witness. *Id*.; *see also Prosser v. Nat'l Rural Utils. Co-op Fin. Corp.*, No. 08-0107, 2009 WL 1252158, at *3 (D.V.I. May 1, 2009).

13

In short, there is no evidence to support Plaintiff's contention that Engeman or any Ogletree attorney is a necessary witness at trial. As detailed in Defendants' brief, Plaintiff has been aware of Ogletree's affiliation with Divi for years, yet only now raises the possibility of a conflict after Defendants have moved to disqualify Plaintiff's counsel. Furthermore, despite repeated admissions by Defendants concerning Ogletree's involvement in drafting Henry's speech, Plaintiff has declined to list any Ogletree attorney as a potential witness in numerous subsequent Rule 26 disclosures, answers to interrogatories, or submissions for the Joint Pretrial Order. (*See* Docket Entry No. 233, Exs. 2-6). Aditionally, Plaintiff has not met his burden of showing that testimony from an Ogeltree attorney is material and obtainable only from an Ogletree attorney. Thus, the Court finds no justification for disqualifying Ogletree under MRPC 3.7, and Plaintiff's motion to disqualify counsel is denied.

*C.  Second Motion to Disqualify Plaintiff's Counsel Rohn & Associates*

MRPC 1.12 sets forth certain ethical obligations of former judges and law clerks. MRPC 1.12. The Rule states in relevant part that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person . . . unless all parties to the proceeding give informed consent, confirmed in writing." MRPC 1.12(a).

"If a lawyer is disqualified [in this way], no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter" unless (1) "the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;" and (2) "written notice is promptly given to the parties and any appropriate tribunal to enable them to ascertain compliance with the provisions of this rule."

14

MRPC 1.12(c).  As such, a conflict arising under MRPC 1.12(a) is imputed to an entire firm only if the lawyer is "associated" with the firm.

"Determining whether an attorney is associated or unassociated requires an analysis of all the circumstances" with no one factor being determinative.  *Mituma v. Syn-Tech Sys., Inc.*, No. 11-430, 2012 WL 4758171, at *3 (N.D. Fla. Oct. 5, 2012); *see also* ABA Comm. on Ethics and Professional Responsibility, Formal Op. 88-356.  Temporary lawyers, for example, may not be "associated" with a firm for imputation purposes.  Formal Op. 88-356.  "The question whether a temporary lawyer is associated with a firm at any time must be determined by a functional analysis of the facts and circumstances involved in the relationship between the temporary lawyer and the firm consistent with the purposes for the Rule."  *Id*.  For example, a lawyer may be deemed "temporary" if he has access to files of "only a limited number of clients" and participated in the "discussion of the affairs of no other clients."  *Id*.; *see also Mituma*, 2012 WL 4758171, at *3 (finding a temporary lawyer not associated with a firm where the lawyer worked only from home, did only work for review by another attorney, had no client contact or expectation of advancement, and did not receive benefits otherwise available to associates).

Defendants' second motion to disqualify Plaintiff's counsel highlights further Rohn's casual attitude toward her professional responsibilities under the MRPCs.  However, the Court finds that there is inadequate justification for disqualifying Rohn & Associates in the present matter.  In particular, Rohn & Associates has shown that Beberman was not affiliated with the firm because she was a temporary employee.  Of particular relevance to this conclusion is the fact that Beberman worked on a limited number of discrete tasks for Rohn & Associates, was not provided with access to case files other than those on which she worked, and did not discuss other cases with attorneys at the firm.  As such, Beberman was a temporary lawyer at Rohn &

15

Associates, any knowledge she gained about the present matter during her clerkship with Judge

Finch is not imputed to Rohn & Associates, and disqualification is not appropriate at this time.

V.  CONCLUSION

For the foregoing reasons, Defendants' motions to disqualify Plaintiff's counsel and

Plaintiff's motion to disqualify Defendants' counsel are denied.  An appropriate order will

follow.

_____
ANNE E. THOMPSON, U.S.D.J.

Date: March 21, 2013