NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

Charlesworth NICHOLAS,

        Plaintiff,

v.

GRAPETREE SHORES, INC. d/b/a DIVI
CARINA BAY RESORTS, et al.,

        Defendants.

Civ. No. 05-119

OPINION

THOMPSON, U.S.D.J.

### I. INTRODUCTION

This matter has come before the Court upon the Motion for Summary Judgment filed by Defendants Grapetree Shores, Inc. d/b/a Divi Carina Bay Resorts ("Divi") and Ellen Henry as Executor/Administrator of the Estate of Patrick Henry (collectively, "Defendants"). (Docket Entry No. 272). Plaintiff Charlesworth Nicholas ("Plaintiff") opposes the motion. (Docket Entry No. 281). The Court has decided the matter upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons given below, Defendants' motion is granted in part and denied in part.

### II. BACKGROUND

This case concerns certain statements about Plaintiff that were allegedly made by a representative of Plaintiff's former corporate employer, Divi. Plaintiff claims that those

statements constitute defamation and also violated a settlement agreement entered into by Plaintiff and Divi.

A.  *The Parties*

Divi is a resort in St. Croix, U.S. Virgin Islands.  (Statement of Undisputed Facts ("SOF"), Docket Entry No. 278 at ¶ 1).  Plaintiff was employed by Divi from October 1999 until July 27, 2003 as a waiter for the Starlight Grill, a restaurant at the resort.  (*Id*. at ¶¶ 1-2).  In 2001, Plaintiff also began to work part-time for the Hotel Employees and Restaurant Employees International Union, ALF-CIO, Local 611 ("Local 611"), which represented hourly food and beverage department employees at Divi.  (*Id*. at ¶ 3).

B.  *Plaintiff's Separation from Employment at Divi*

According to Defendants, between February 2003 and July 2003, Divi received numerous complaints from customers who claimed that they had received poor service at the Starlight Grill.  (*Id*. at ¶ 5).  According to Defendants, Plaintiff was specifically mentioned as being rude and discourteous.  (*Id*.).  On July 27, 2003, Plaintiff and other Starlight Grill employees attended a meeting with Divi's management.  (*Id*. at ¶ 13).  Although the parties dispute what was said at the meeting, they agree that Plaintiff was informed that he was being suspended for a period of five days.  (*Id*. at ¶ 14).

Approximately one week later, on August 4, 2003, Divi informed Plaintiff by letter that he was being suspended indefinitely.  (*Id*. at ¶ 17).  The letter stated in pertinent part:

> After much deliberation, which included a thorough review of your personnel file, and written complaints from our guests and dining patrons, the Divi Resort is suspending your employment indefinitely without pay, effective immediately.  We do not reach this decision lightly.  As early as February, 2003 and as late as July 27, 2003, our guests have expressed in writing, a total dissatisfaction with your poor service and lack of hospitality at the Starlight Grill.  Some of these comments are included for your information.

Unfortunately, not only our guests, but also your coworkers have expressed their displeasure in your interaction with them. As a result, they have indicated their refusal or reluctance to work with you. On July 27, 2003, when management attempted to bring these complaints to your attention, you refused to acknowledge the complaints and discuss ways to improve your service and hospitality to our guests. In addition, when we attempted to issue you a five-day suspension letter, you became argumentative and refused to accept the written suspension document. Your actions on July 27th only served to compound an already unacceptable situation, hereby warranting this indefinite suspension.

(*Id*. at ¶ 17).[1]

C. *Action Before the National Labor Relations Board*

In August 2003, Local 611 initiated a separate action against Divi before the National

Labor Relations Board ("NLRB"), by filing a complaint that alleged that Divi discriminated

against Plaintiff and other employees on the basis of their involvement in union activities. (*Id*. at

¶ 21). Local 611 amended the complaint in October 2003 to state that Divi had refused to

employ Plaintiff since August 4, 2003. (*Id*. at ¶ 22).

On December 13, 2003, Plaintiff, Divi, and the Virgin Islands Workers Union ("VIWU"),

formerly known as Local 611, entered into a settlement agreement ("Settlement Agreement") to

resolve the claims asserted on behalf of Plaintiff in the action before the NLRB. (*Id*. at ¶¶ 23-24,

26). The Settlement Agreement states in pertinent part that "Nicholas was employed by Divi as

a Starlight server, and was indefinitely suspended from his employment on or about July 27,

2003 and then ultimately terminated . . . ." (Docket Entry No. 280, Attach. 9 at 1). The parties

agreed that Divi would pay Plaintiff a lump sum of approximately $7,000 and VIWU and

Plaintiff would release Divi from all claims arising out of Plaintiff's employment with Divi. (*Id*.

at ¶¶ 1, 2). The Settlement Agreement also states that "Divi agrees that it will treat Nicholas'

separation from employment as a voluntary resignation and shall remove the documentation

---

[1] Plaintiff disputes that the allegations contained in the letter are true but admits that he received a copy of the letter. (*Id*.).

3

concerning the termination from his personnel file." (*Id.* at ¶ 3). According to the Settlement

Agreement, it "represents the complete understanding between the parties." (*Id.* at ¶ 4).

### D. *Plaintiff's Efforts to Unionize Divi Employees as President of the VIWU*

In April 2004, Plaintiff officially became the Acting President of the VIWU.[2] (SOF,

Docket Entry No. 278 at ¶ 32). During the summer of 2005 and under Plaintiff's leadership, the

VIWU was engaged in a campaign to unionize Divi's employees. (*See id.* at ¶¶ 40, 41). On June

22, 2005, Patrick Henry ("Henry"), the General Manager of Divi, conducted two meetings with

Divi's hourly employees to discuss the VIWU's union campaign. (*Id.* at ¶ 40). The parties agree

that, during one or both of the meetings, Henry stated that Plaintiff had been terminated from

employment at Divi. (*Id.* at ¶ 41).

The remainder of what was said at the meetings, however, is hotly contested. According

to Plaintiff,[3] Henry, speaking without prepared notes, made a number of disparaging remarks

about Plaintiff. (*Id.* at ¶¶ 43, 45). In particular, Plaintiff claims that Henry said that

> Plaintiff was out for revenge against the hotel, he was broke, financially irresponsible, he
> needed the employees' money, he would misuse the employees' Union dues, he was a
> full time employee of the Union in 2003, and thereafter the Union shut down, and
> Plaintiff was personally responsible, that he did not want to work anymore but just live
> off the employees' money, that he was fired from the Divi and the Divi had a file to
> support his termination, and that he was a 't'ief' and would steal the employees' money
> to buy a house and pay for his car.

(Pl.'s Response to SOF ("RSOF"), Docket Entry No. 278 at 51 ¶ 7). Additionally, Plaintiff

claims that Henry said Plaintiff was terminated for improper or criminal conduct and that Divi

had a file of bad acts committed by Plaintiff to prove it. (SOF, Docket Entry No. 278 at ¶ 43).

---

[2] Plaintiff was verbally appointed Acting President of the VIWU in December 2003 when the then President of the
VIWU became ill. (SOF, Docket Entry No. 278 at ¶ 25).
[3] Plaintiff was not present at either of the meetings. (*Id.* at ¶ 42).

Defendants paint a very different picture of what was said at the meetings. According to them, Henry did not make the disparaging comments alleged. (*Id.* at ¶¶ 68-72). They admit only that Henry stated that Plaintiff had been terminated from employment by Divi. (*Id.* at ¶ 41).

### E.  Aftermath

After the June 22, 2005 meetings, Plaintiff continued to serve as Acting President of the VIWU and became President of the VIWU in 2006. (*Id.* at ¶¶ 46, 48). In this position, Plaintiff earned a salary of approximately $38,000 in 2005. (*Id.* at ¶ 47). He received salary increases in 2006, 2007, and 2011 to $40,420, $49,020, and $50,000, respectively. (*Id.* at ¶¶ 49, 50, 51, 53). Despite these salary increases, Plaintiff contends that he lost the ability to earn income as a result of Henry's alleged statements. (*Id.* at ¶ 74). Plaintiff explained that "[p]robably if the employees did not listen to [Henry], [VIWU would have] won the election, that's more work that I have with the union, and have the shops have contract (sic), the organization probably would have given – have me working, have more money . . . ." (*Id.*). Plaintiff does not contend that his salary was based on the amount of union dues collected, but suggests that he would have earned an increase in his salary because he would have had more work to do. (*Id.* at ¶¶ 74-75).

Plaintiff claims that after the June 22, 2005 meetings, he was also ridiculed by others who called him a "t'ief," and employees from other employers demanded their union dues back. (*Id.* at ¶ 80). Plaintiff also alleges that the stress from the incident caused him to suffer from headaches, sleeplessness, chest pains, back pains, high blood pressure, stress, and anger issues. (RSOF, Docket Entry No. 278 at 55 ¶ 25).

### F.  Initiation of Lawsuit

In July 2005, Plaintiff initiated this lawsuit in the Superior Court of the Virgin Islands, which was subsequently removed to federal court on August 17, 2005. (Docket Entry No. 1).

On November 9, 2007, Defendants moved to stay proceedings pending arbitration.  (Docket Entry No. 17).  Plaintiff opposed the entry of a stay, (Docket Entry No. 20), and on July 24, 2008, the Court denied the motion, finding that the parties had not agreed to arbitration.  (Docket Entry No. 32).  Defendants appealed the Court's decision, which was affirmed by the Third Circuit on August 26, 2010.  (Docket Entry No. 50).

On December 6, 2010, Plaintiff filed an amended complaint.  (Docket Entry No. 60).  A second amended complaint ("Second Amended Complaint") was filed on January 28, 2011.  (Sec. Am. Compl., Docket Entry No. 68).  In the Second Amended Complaint, Plaintiff sought relief from Defendants for breach of contract, defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress.  (*Id.*).

Defendants moved to dismiss Plaintiff's Second Amended Complaint on February 14, 2011.  (Docket Entry No. 69).  The Court granted Defendants' motion with regards to Plaintiff's claims for intentional and negligent infliction of emotional distress.  (Docket Entry No. 82 at 17-18).  However, after finding that Plaintiff's defamation claim was preempted by Section 7 of the National Labor Relations Act ("NLRA") and Section 301 of the Labor Management Relations Act ("LMRA") and that Plaintiff's breach of contract claim was also preempted by Section 301 of the LMRA, the Court held that Plaintiff's pleadings were sufficient to state a claim for defamation and breach of contract under federal law.  (*Id.* at 15-18).

On January 31, 2012, Defendants moved to disqualify Plaintiff's counsel after Plaintiff's counsel sought to hire a former employee of Defendants' counsel's law firm.  (Docket Entry No. 156).  In preparation for a hearing on the motion to disqualify, Defendants issued a subpoena duces tecum to Plaintiff's counsel, which spawned a number of new motions, including a Motion to Compel Plaintiff's Counsel to Comply Fully with the Subpoena Duces Tecum, and a Motion

for an Order to Show Cause Why Plaintiff's Counsel Should Not Be Held in Contempt.  (Docket Entry Nos. 199, 230).

On July 26, 2012, Plaintiff filed a motion seeking to disqualify Defendants' counsel. (Docket Entry No. 220).  Defendants then filed a second motion to disqualify Plaintiff's counsel, this time on the basis of Plaintiff's counsel's employment relationship with a former law clerk of Judge Finch.  (Docket Entry No. 239).  The case was reassigned to this New Jersey judge on February 6, 2013, and the Court denied each of the parties' motions to disqualify on March 22, 2013.  (Docket Entry Nos. 253, 271).  Defendants now move for summary judgment on Plaintiff's remaining defamation and breach of contract claims.  (Docket Entry No. 272).

### III. LEGAL STANDARD

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In deciding a motion for summary judgment, a district court considers the facts drawn from "the pleadings, the discovery and disclosure materials, and any affidavits" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion."  FED. R. CIV. P. 56(c); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted).

In resolving a motion for summary judgment, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986).  More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the nonmoving party.  *Id.* at 248-49.  The Court must grant summary judgment against any party "who fails to make a showing sufficient

to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Properly applied, Rule 56 will "isolate and dispose of factually unsupported claims or defenses" before those issues come to trial. *Id.* at 323-24.

## IV. ANALYSIS

Plaintiff claims that Henry's alleged statements constitute defamation and breach of the Settlement Agreement. The Court now considers the merits of Plaintiff's claims, taking his defamation claim first.

### A. *Defamation*

#### 1. *Application of the National Labor Relations Act*

"It is well established that state-law claims are presumptively preempted by the NLRA when they concern conduct that is actually or arguably either protected or prohibited by the NLRA . . . ." *Pa. Nurses Ass'n v. Pa. State Educ. Ass'n*, 90 F.3d 797, 801 (3d Cir. 1996). The NLRA, which establishes the right of employees to form unions and prohibits unfair labor practices that interfere with that right, "manifests a congressional intent to encourage free debate on issues dividing labor and management." *Linn v. United Plant Guard Workers of Am.*, 383 U.S. 53, 59, 62 (1966) (citing §§ 7-8 of the NLRA). Consequently, the Supreme Court has held that defamation claims under the NLRA are subject to the constitutional standard of media liability first enunciated in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964). *Id.* at 63-65. Thus, a plaintiff pursuing a defamation claim under the NLRA must show that the allegedly defamatory statements were false representations of fact made with actual malice that resulted in actual or special damages to Plaintiff. *Id.* at 65.

Here, consistent with the NLRA's "profound commitment to the principle that debate should be uninhibited, robust, and wide-open" in labor contexts, *id*. at 62, this Court held at the motion to dismiss stage that the fact that the alleged statements were made during a speech given at an employee meeting concerning a union organizing drive is "sufficient to trigger the protections of the NLRA." (Docket Entry No. 82 at 7). The Court concluded that, therefore, Plaintiff must show that the allegedly defamatory statements were false representations of fact made with actual malice that resulted in actual or special damages to Plaintiff. (*Id*. at 5-6).

Although the context in which the allegedly defamatory statements were made triggers the protections of the NLRA and, therefore, preempts Plaintiff's state law defamation claim, not all statements are necessarily protected by the NLRA. For example, the Supreme Court, recognizing that "exaggerated rhetoric" is commonplace in labor disputes,[4] has stated that "epithets such as 'scab,' 'unfair,' and 'liar' are . . . not so indefensible as to remove them from the protection of § 7 [of the NLRA], even though the statements are erroneous and defame one of the parties to the dispute." *Linn*, 383 U.S. at 61. However, while "intemperate, abusive and inaccurate statements" may be tolerated in a union context, the NLRA does not give "either party license to injure the other intentionally by circulating defamatory or insulting material known to be false." *Id*. (citing *Md. Drydock Co. v. Nat'l Labor Relations Bd.*, 183 F.2d 538 (4th Cir. 1950)).

Defendants contend that many of the alleged statements are merely "exaggerated rhetoric." Furthermore, they argue that this Court's opinion issued at the motion to dismiss stage

---

[4] The Supreme Court noted that:

> [l]abor disputes are ordinarily heated affairs; the language that is commonplace there might well be deemed actionable per se in some state jurisdictions. Indeed representation campaigns are frequently characterized by bitter and extreme charges, countercharges, unfounded rumors, vituperations, personal accusations, misrepresentations and distortions. Both labor and management often speak bluntly and recklessly, embellishing their respective positions with imprecatory language.

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 272 (1974) (citing *Cafeteria Emps. Union, etc. v. Angelos*, 320 U.S. 293, 295 (1943)).

held just that, and thus, Plaintiff's defamation claim is limited to the alleged statement that Plaintiff was terminated for committing bad acts, including criminal acts, and that Divi has a file to prove it.

Before considering this argument, however, the Court finds it necessary to address another argument advanced by Defendants as to whether the alleged statements were properly described in the Second Amended Complaint. Defendants contend that the "purported statements that Nicholas '[i]s a 't'ief;' '[w]as responsible for the Union's past failures;' '[i]s financially irresponsible;' and '[d]oes not want to work anymore;' were not alleged" in the complaint and, therefore, should not be considered.[5] Upon reviewing the allegations in the Second Amended Complaint,[6] however, the Court cannot say that Plaintiff failed to adequately describe the statements. Therefore, Defendants' argument that the Court should exclude from consideration those statements not expressly listed in the Second Amended Complaint is rejected.

Having addressed Defendants' argument concerning the adequacy of Plaintiff's pleadings, the Court now turns to the parties' interpretations of the Court's motion to dismiss

---

[5] In support of their argument, Defendants cite *Mehta v. Fairleigh Dickinson Univ.*, No. 09-455, 2012 WL 458421 (D.N.J. Feb. 9, 2012), in which the district court stated:

> [i]f the allegedly defamatory statements were made before the complaint was filed, plaintiff should have described these statements in the complaint, and if Plaintiff later uncovered such statements, Plaintiff should have moved to amend the defamation claim to include such statements. As such to the extent Plaintiff seeks to rely on statements not mentioned in the Complaint as the basis for its defamation claim, this Court will not now consider them.

*Id.* at *1 n. 6 (citing *Minerva Marine, Inc. v. Spiliotes*, 2005 Dist. LEXIS 41854, at *13 (D.N.J. Apr. 4, 2005) (internal quotations omitted)).

[6] The Second Amended Complaint contains allegations

> accusing the Plaintiff of stealing money from the Union, claiming that the Plaintiff only wants a Union recognized to represent the employees so that Plaintiff can steal the employees (sic) dues, claiming that the Plaintiff was a former disgruntled employee who had been terminated and was just trying to get back at the hotel, claiming that Defendants had a file full of information of bad acts committed by the Plaintiff and inferring that at least some of them were criminal acts, and further claiming that the Plaintiff was broke, in financial trouble and owed money all over town and wanted the Union to be recognized so he could steal dues to pay his bills.

(Docket Entry No. 68, Attach. 1 at ¶ 9).

opinion in which the Court considered whether any of the alleged statements were protected by the NLRA as "exaggerated rhetoric."  In that opinion, the Court wrote that "Henry's accusation that plaintiff's motive in organizing the workers to steal their union dues can be categorized as 'intemperate, abusive and inaccurate statements' or as "exaggerated rhetoric" that falls within the protection of labor law." (Docket Entry No. 82 at 8).  Additionally, the Court found it "reasonable to assume that the Divi employees would interpret Henry's statement that Nicholas intended to rob them as inflammatory rhetoric intended to persuade them not to join the union rather than as representations of fact." (*Id.*).  "On the other hand," the Court reasoned, "Henry's statement that plaintiff had been terminated for improper or criminal conduct goes beyond 'misrepresentation,' 'distortion' or 'rumor' regarding plaintiff's motives for organizing Divi employees" and "is more accurately described as a factual representation . . . than an opinion." (*Id.* at 8-9).

The parties advance different interpretations of this opinion.  Defendants argue that it should be read broadly to protect all of the alleged statements as mere "exaggerated rhetoric" except for the statement that Plaintiff was terminated for committing bad acts, including criminal acts, and that Divi has a file to prove it.  (Docket Entry No. 273 at 4).  Plaintiff contends, however, that the Court's opinion did not deem Henry's statements to be protected speech under the NLRA, particularly those statements in which Henry allegedly called Plaintiff a "t'ief" who would steal union members' dues.  (Docket Entry No. 281 at 12-13).  Plaintiff argues instead that those comments, which might otherwise be mere "exaggerated rhetoric," when combined with the statement that Plaintiff was terminated by Divi for engaging in bad acts, suggests that Plaintiff had engaged in criminal conduct.  (*Id.*).  Plaintiff contends that such accusations are not protected under the NLRA.  (*Id.*).

11

Having reviewed the Court's opinion, the Court is inclined to agree with Plaintiff that the alleged statements calling Plaintiff a "t'ief" who would steal union dues are not "exaggerated rhetoric" protected under the NLRA. Statements that can be reasonably understood to impute specific criminal or other wrongful acts to an individual are subject to the actual malice test. *Cianci v. New Times Pub. Co.*, 639 F.2d 54, 63-64 (2d Cir. 1980). Here, Henry's alleged statements referring to Plaintiff as a "t'ief," when combined with the alleged statement that Plaintiff was terminated for committing bad acts, impute criminal conduct to Plaintiff. As such, the Court's motion to dismiss opinion did not hold that those statements are protected speech under the NLRA.

The Court now turns to the substance of Defendants' motion for summary judgment and considers whether Plaintiff has established that a genuine issue of material fact exists that (1) Defendants' assertion that he was terminated for criminal or improper conduct was a false representation of fact; (2) the representation was made with "actual malice;" and (3) it resulted in actual or special damages to Plaintiff.

### 2. False Statements of Fact

To succeed on a motion for summary judgment, a plaintiff must show that a genuine issue of material fact exists as to whether a false representation of fact was made. *Linn*, 383 U.S. at 55. First, the Court notes that a genuine issue of material fact exists as to whether the statements were actually made. Although Plaintiff and Defendants agree that Henry stated at the June 22, 2005 meetings that Plaintiff had been terminated by Divi, a genuine issue of material fact exists as to whether the remainder of the alleged statements were actually uttered. (*See* SOF, Docket Entry No. 278 at ¶¶ 41, 43, 68, 71).[7]

---

[7] To the extent Defendants argue that Plaintiff has failed to present evidence to show that each of the alleged statements were made, the Court finds this argument obfuscated by the Court's resolution of Defendants' arguments

Next, the Court considers whether a genuine issue of material fact exists as to whether the alleged statements are false. First, Plaintiff argues that he was not terminated as Henry stated, but was actually indefinitely suspended. (Docket Entry No. 281 at 15). Plaintiff also apparently argues that he was not terminated because, pursuant to the Settlement Agreement, the parties agreed to "treat" Plaintiff's separation from employment at Divi as a voluntary resignation. (*Id.* at 17).

Defendants counter, however, that Plaintiff was in fact terminated. To support this argument, they point to the Settlement Agreement, which states that Plaintiff "was indefinitely suspended on or about July 27, 2003 and then ultimately terminated . . . ." (Docket Entry No. 273 at 5-6). Defendants also point to Plaintiff's own testimony from (1) a hearing before the NLRB on February 23, 2005 where Plaintiff stated that he had been "terminated" by Divi, (*id.*; SOF, Docket Entry No. 278 at ¶ 37); and (2) his deposition during which he repeatedly stated that he had been terminated. (Docket Entry No. 275, Attach. 2 at 103:16-22 (responding "yes" to the statement "[y]ou were ultimately terminated"), 108:3-6 ("Well, ever since I terminated (sic) from Divi I working (sic) for the union . . . ."), 111:10 ("I was terminated."), 113:6-22 (stating repeatedly "I was terminated"), 124:23-125:6). Upon review of the evidence, the Court concludes that no reasonable jury could conclude that Plaintiff was not terminated. As such, to the extent Plaintiff argues he was defamed by Henry's statement that Plaintiff was terminated by Divi, the Court finds that summary judgment is proper.

Additionally, the parties dispute the falsity of the statement that Plaintiff was terminated for committing bad acts and that Divi had a file to prove it. First, Plaintiff claims that his

---

in Section IV(A)(1) of this opinion. In other words, because the Court finds that the alleged statements were properly described in the Second Amended Complaint and were not excluded from consideration as protected speech in the Court's motion to dismiss opinion, the Court now concludes that Plaintiff has advanced sufficient evidence of the alleged statements to present a genuine issue of material fact as to whether the statements were made.

termination from Divi was a result of his union activities, while Defendants argue it was due to numerous customer complaints Divi had received.  (Docket Entry No. 278 at ¶¶ 5-12, 15, 17).  The parties also dispute whether Divi had a file to prove Plaintiff's bad acts.  (Docket Entry Nos. 273 at 6, 281 at 15-16).  Therefore, there appears to be a genuine issue of material fact as to the falsity of the alleged statement that Divi had a file to prove that Plaintiff was terminated for bad acts.

Finally, Defendants argue that any statement that Plaintiff engaged in criminal conduct is true, and they are, therefore, entitled to the absolute defense of truth.  They point to the fact that prior to Henry's statements, Plaintiff swore under penalty of perjury to the accuracy of certain documents submitted to the federal government, which contained statements that were false when made.[8]  (Docket Entry No. 273 at 8).  Following Defendants' logic, they are, therefore, entitled to the absolute defense of truth because "Divi possessed information regarding conduct attributable to [Plaintiff] that could be characterized as criminal."  (*Id.*).

The Court finds this argument unavailing.  Evidence of criminal conduct of this kind is not relevant because the allegedly defamatory statement relates to Henry's insinuation that Plaintiff was a thief.  There is also no evidence to suggest that Divi terminated Plaintiff as a result of thievery.  Therefore, the Court finds that Defendants are not entitled to the absolute defense of truth with regards to any statement allegedly made by Henry about Plaintiff's criminal conduct as no evidence of relevant criminal conduct has been shown.

---

[8] On approximately March 21, 2005, Plaintiff executed a Form LM-3 Labor Organization Annual Report ("2004 LM-3 Form") on behalf of the VIWU.  (SOF, Docket Entry No. 278 at ¶ 34).  On the 2004 LM-3 Form, which was submitted to the NLRB, Plaintiff certified "under penalties of applicable law, that all of the information submitted in [the] report . . . has been examined by the signatory, and is, to the best of the undersigned's knowledge and belief, true and correct."  (*Id.*).  Plaintiff indicated on the 2004 LM-3 Form that the maximum amount recoverable under the VIWU's fidelity bond for a loss caused by an officer or employee was $500,000.  (*Id.* at ¶ 36).  However, on June 17, 2005, Plaintiff testified under oath at a public hearing before the NLRB that the VIWU in fact did not have a fidelity bond in place in 2004.  (*Id.* at ¶ 38).

3.  *Actual Malice*

To survive a motion for summary judgment, a plaintiff who asserts a defamation claim in a labor context must also show that the statement was made with actual malice. *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 281 (1974) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 285-86 (1964)). The "actual malice" standard is based on the speaker's actual state of mind and is, therefore, subjective. *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). "Actual malice is a term of art that the [Supreme] Court has explained 'should not be confused with the concept of malice as an evil intent of a motive arising from spite or ill reputation.'" *Kendall v. Daily News Pub. Co.*, No. 11-4162, 2013 WL 856433, at *7 (3d Cir. 2013) (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510-11 (1991)). Instead, the standard is met when the author or publisher of the statement "in fact entertained serious doubts as to the truth of his publication . . . or proceeded on in the face of a 'high degree of awareness of . . . probable falsity.'" *St. Surin v. Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1317 (3d Cir. 1994) (citations omitted). Therefore, the plaintiff must present evidence that the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *Old Dominion*, 418 U.S. at 281 (citing *New York Times Co.*, 376 U.S. at 280, 285-86).

The Supreme Court has cautioned that "reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *Id.* Therefore, "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989). Instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his

publication." *Id*.  Additionally, "[a]n erroneous interpretation of the facts does not meet the standard." *Schiavone Const. Co. v. Time, Inc.*, 847 F.2d 1069, 1090 (3d Cir. 1988) (citing *Time v. Pape*. 401 U.S. 279, 292 (1971)).

Assessing Plaintiff's defamation claim, the Court finds that Plaintiff has failed to present evidence of actual malice with regards to the statement that Plaintiff was terminated by Divi. While Plaintiff claims that he "was never terminated, but rather, he was indefinitely suspended," the Court considers this to be an erroneous interpretation of the facts that does not meet the standard for actual malice.  The Court's understanding is further supported by Plaintiff's own testimony that he was terminated as well as the Settlement Agreement signed by Plaintiff which states that Plaintiff was "ultimately terminated." (Docket Entry No. 274, Attach. 3).  As Plaintiff has failed to put forward additional evidence of actual malice, a reasonable jury could not conclude that Henry's statement that Plaintiff was terminated was made with actual malice.

The Court finds, however, that a genuine issue of material fact exists as to whether the statement that Plaintiff was terminated for bad acts, including criminal acts, was made with actual malice.  Plaintiff has offered evidence that the customer complaints were fabricated, which suggests that Henry in fact entertained serious doubts as to the truth of his publication when he made the statement that Plaintiff was terminated for bad acts.  (Docket Entry No. 281 at 18).  As such, the Court finds that there is a genuine issue of material fact as to whether the alleged statement was made with actual malice.

### 4.  *Actual or Special Damages*

To survive a motion for summary judgment, a plaintiff asserting a defamation claim that involves statements made in the context of a labor dispute must also present proof of actual harm, "which may include general injury to reputation, consequent mental suffering, alienation

of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state tort law." *Linn v. United Plant Guard Workers of Am.*, 383 U.S. 53, 65 (1966); *Intercity Maintenance Co. v. Local 254, Serv. Emps. Int'l Union AFL-CIO*, 241 F.3d 82, 89-90 ("[P]laintiffs who endure even malicious libels during a labor dispute must present evidence of harm from defamation in order to recover, notwithstanding the law of the states . . . in which damages would otherwise be presumed"). "[A]ctual injury is not limited to out-of-pocket loss" and may include "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Cohen v. Raedler*, 17 V.I. 46, 65 (Terr. Ct. St. Croix 1980).

Here, Plaintiff argues that he was harmed by the alleged statements because "all the defamatory statements concern matters that involve either the commission of a criminal offense or a 'matter incompatible with [Plaintiff's] business, trade, profession or office.'" (Docket Entry No. 281 at 21 (citing Restatement (Second) of Torts §§ 570, 573)). He claims that the statements "spread through the community and to employees at other places where union campaigns were ongoing" and, as a result, he and his wife were "accosted by employees asking for their union dues back and asking Plaintiff if he stole their money." (*Id.*). Plaintiff also contends that he was ridiculed and accused of being a "t'ief." (*Id.*). He claims that he became extremely upset as a result and "suffered from headaches, sleeplessness, chest pains, back pains, high blood pressure, stress, and anger issues." (*Id.* at 22). Plaintiff also claims to have suffered economic damages. He claims that Henry's alleged statements caused VIWU to lose an election at Divi and that had VIWU won the election, he would have earned a higher salary. (*Id.*).

Defendants dispute, however, that Plaintiff was harmed in any way by the alleged statements. They argue that he had publicly admitted that he was terminated before the alleged statements were made and, therefore, was not harmed by any statement made by Henry to that

effect.[9]  (Docket Entry No. 284 at 19-20).  Defendants also argue that the allegations that Plaintiff was denied a salary increase as a result of Henry's statements and the subsequent loss of the election in Divi are too speculative.  (*Id*. at 16).  They also argue that Plaintiff has failed to show that he was denied a salary increase as a result of any alleged decrease in union dues caused by Henry's statements and point to Plaintiff's own admission that his salary was not tied to the VIWU's income from dues.  (Docket Entry No. 273 at 13).  Finally, Defendants also contend that any demands for union dues to be returned were not a product of statements made by Henry but were actually a result of the union's inability to prevent a wage cut for those employees.  (*Id*. at 14).

Upon review of the evidence, the Court cannot say that Plaintiff has not shown that a genuine issue of material fact exists as to damages.  Plaintiff has presented evidence of damages relating to his reputation, health, and financial well-being.  As such, the issue of damages appears to be one appropriate for a jury.

### B.  *Breach of Contract*

Plaintiff also brings a claim for breach of the Settlement Agreement under Section 301 of the LMRA.  To succeed on this claim, Plaintiff must show (1) the existence of a contract, including its essential terms;[10] (2) the breach of a duty imposed by the contract; and (3) damages resulting from the breach.  *Speaks v. Gov't of Virgin Islands*, No. 06-168, 2009 WL 167330, at *4 (D.V.I. Jan. 14, 2009).  The Court considers first whether Defendants breached a duty imposed by the Settlement Agreement before turning to the issue of damages.

When deciding federal breach of contract claims under Section 301, courts apply traditional rules of contract interpretation.  *Bechtel Corp. v. Local 215, Laborers' Int'l Union of*

---

[9] On February 23, 2005, Plaintiff testified under oath at a public hearing before the NLRB that he was "terminated" from employment at Divi.  (SOF, Docket Entry No. 278 at ¶ 37).
[10] The parties apparently do not dispute that the Settlement Agreement is a valid contract.

*N. Am.*, 544 F.2d 1207, 1213 n. 6A (3d Cir. 1976); *Am. Flint Glass Workers Union, AFL-CIO v. Beaumont Glass Co.*, 62 F.3d 574, 580-81 (3d Cir. 1995) ("The Settlement Agreement, as an agreement between as employer and a union, is a labor agreement, but its interpretation is nevertheless governed by general principles of contract law.").  Generally, when determining whether a contract imposes a duty, "the intent of the parties to a written contract is contained in the writing itself." *McDonald v. Davis*, No. 04-93, 2009 WL 580456, at *5 (D.V.I. Mar. 5, 2009) (quoting *Bohler-Uddeholm Am., Inc. v. Davis*, 247 F.3d 79, 92 (3d Cir. 2001)).  "Where the intent is clear and unambiguous, 'there is no need to resort to extrinsic aids or evidence, instead, the meaning of a clear and unequivocal written contract must be determined by its contents alone.'" *Id*. at *5 (quoting *Bohler-Uddeholm*, 247 F.3d at 92).  "If, however, the Court determines that the contract is ambiguous, then the interpretation of the contract is left to the fact finder to resolve the ambiguity in light of extrinsic evidence." *Sunshine Shopping Ctr., Inc. v. Kmart*, 85 F. Supp. 2d 537, 540 (D.V.I. 2000).  "A contract provision is considered ambiguous if it is susceptible to two reasonable alternative interpretations." *Id*.

Here, the contract provision at issue concerns Defendants' obligations regarding communications about Plaintiff's separation from employment at Divi.  Specifically, the contract states that, "Divi agrees that it will treat [Plaintiff's] separation from employment as a voluntary resignation and shall remove the documentation concerning the termination from his personnel file." (Docket Entry No. 280, Attach. 9 at ¶ 3).

Plaintiff contends that this provision imposed a duty on Defendants to abstain from referring to Plaintiff's departure from Divi as anything but a voluntary resignation.  (Docket Entry No. 281 at 7-12).  Using Plaintiff's logic, Henry's statement that Plaintiff was terminated by Divi violated the Settlement Agreement.  (*Id.*).

19

On the other hand, Defendants argue that the Settlement Agreement does not contain "any promises that Divi would never state out loud that [Plaintiff] had been terminated, that he had engaged in improper or criminal conduct, or that it had a file full of bad acts committed by [Plaintiff]." (Docket Entry No. 273 at 16). They claim that the phrase "treat [Plaintiff's] separation from employment as a voluntary resignation" is limited by the subsequent clause, which directs Divi to "remove the documentation concerning the termination from [Plaintiff's] personnel file." (*Id.* at 16-17). As such, Defendants essentially argue that they were only required to treat Plaintiff's separation from employment as a voluntary resignation in Divi's records and in correspondence with prospective employers. (*Id.*). Thus, Defendants argue that the Settlement Agreement imposed no duty breached by Henry's alleged statements. (*Id.*).

Upon reviewing the Settlement Agreement, the Court finds that the contract provision that requires Divi to "treat [Plaintiff's] separation from employment as a voluntary resignation and . . . remove the documentation concerning the termination from his personnel file" is ambiguous. In reaching this conclusion, the Court notes that the term "treat," when used in this context, is susceptible to two reasonable alternative interpretations. Therefore, the meaning of the contract must be determined based on extrinsic evidence, a determination that is properly left for the jury in this case. As such, a genuine issue of material fact exists as to whether the Settlement Agreement imposed a duty breached when Henry stated that Plaintiff had been terminated.

As the Court has already determined that a genuine issue of material fact exists as to whether Plaintiff suffered actual or special damages in the defamation context, the Court concludes that a genuine issue of material fact exists as to whether Plaintiff suffered damages as a result of the alleged breach of the Settlement Agreement.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted in part and denied in part.  An appropriate order will follow.


_____
ANNE E. THOMPSON, U.S.D.J.


Date: _____5/22/13_____